IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

WENDELL LEHIGH JR.,                                          Case No. 6:16-cv-0902-JR

                    Plaintiff,                              FINDINGS AND
                                                                              RECOMMENDATION
     v.

COMMISSIONER,
Social Security Administration,

                    Defendant.

RUSSO Magistrate Judge:

      Plaintiff Wendell Lehigh Jr. seeks judicial review of the final decision of the
Commissioner of the Social Security Administration ("Commissioner") denying Disability
Insurance Benefits ("DIB") under Title II of the Social Security Act ("the Act"). For the reasons
set forth below, the decision of the Commissioner should be REVERSED and this case should be
REMANDED for further proceedings.

## BACKGROUND

Plaintiff was born in Atascadero, California on August 9, 1982. Tr. 304, 830.[1] He left high school before graduating and joined the United States Army, eventually earning his GED. Tr. 862, 322. He served in the Army from 2001 through 2011 and was honorably discharged at the rank of staff sergeant. Tr. 896.

Plaintiff filed a disability insurance application on January 31, 2014, alleging disability with an onset date of June 1, 2011. Tr. 64. His application was denied initially and upon reconsideration. Tr. 64, 96. Plaintiff requested a hearing before an Administrative Law Judge ("ALJ") and appeared via teleconference represented by counsel on March 18, 2015. Tr. 108–09, 40–63. On June 3, 2015, the ALJ issued a decision finding plaintiff not disabled. Tr. 19–39. On March 17, 2016, the Appeals Council denied plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. Tr. 1. This appeal followed.

## DISABILITY ANALYSIS

The initial burden of proof rests upon the claimant to establish disability. Howard v. Heckler, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five step sequential process for determining whether a person is disabled. Bowen v. Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. § 404.1520. First,

---

[1] The record before the Court constitutes more than 1,000 pages, with some duplicative documents. Where evidence occurs in the record more than once, the Court will generally cite to the transcript pages on which that information first appears.

the Commissioner determines whether the claimant is engaged in "substantial gainful activity." Yuckert, 482 U.S. at 140; 20 C.F.R. § 404.1520(b). If so, she is not disabled.

At step two, the Commissioner evaluates whether the claimant has a "medically severe impairment or combination of impairments." Yuckert, 482 U.S. at 140–41; 20 C.F.R. § 404.1520(c). If the claimant does not have a severe impairment, she is not disabled.

At step three, the Commissioner determines whether the claimant's impairments, either individually or in combination, meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." Yuckert, 482 U.S. at 140–41; 20 C.F.R. § 404.1520(d). If so, she is presumptively disabled; if not, the Commissioner proceeds to step four. Yuckert, 482 U.S. at 141.

At step four, the Commissioner determines whether the claimant can still perform "past relevant work." 20 C.F.R. § 404.1520(f). If the claimant can perform past relevant work, she is not disabled; if she cannot, the burden shifts to the Commissioner.

At step five, the Commissioner must establish the claimant can perform other work existing in significant numbers in the national or local economy. Yuckert, 482 U.S. at 141–42; 20 C.F.R. § 404.1520(g). If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. § 404.1566.

**THE ALJ'S FINDINGS**

The ALJ performed the sequential analysis, as noted above. At step one, the ALJ found plaintiff had not engaged in substantial gainful activity since the alleged onset date. Tr. 24. At step two, the ALJ determined the following impairments were medically determinable and severe:

> unilateral hearing loss/tinnitus, degenerative joint disease of the
> thoracic spine, post-traumatic stress disorder with cannabis
> dependency, mild neurocognitive disorder, and mild depression.

Tr. 25. At step three, the ALJ determined plaintiff's impairments, neither individually nor in

combination, met or equaled the requirements of a listed impairment. Tr. 27.

Because the ALJ did not establish presumptive disability at step three, she continued to

evaluate how plaintiff's impairments affected his ability to work. The ALJ determined plaintiff

had a residual functional capacity ("RFC") with the following limitations:

> [Plaintiff can] perform light work . . . with the ability to lift 20
> pounds occasionally and 10 pounds infrequently. He can also sit,
> stand, and walk each 6 hours in an 8-hour day for a combined total
> of 8 hours of activity. However, the claimant is restricted to
> occasionally climbing ladders, ropes, and scaffolds. He can
> frequently climb ramps and stairs, stoop, crouch, crawl, and kneel.
> Due to marijuana use, he must avoid exposure to hazards, such
> unprotected heights and large moving equipment. Due to his
> hearing impairment, he must avoid exposure to high noise
> environments and cannot perform work that requires excellent
> hearing. He can understand, remember and carry out simple
> [instructions] in a predictable setting with no teamwork
> assignments.

Tr. 29. [2]

---

[2] While not raised by the parties, the Court notes the RFC set forth in the ALJ's decision
contained the word "introductions" where it appears the ALJ intended the word "instructions."
Tr. 29. Indeed, the hypothetical posed to the Vocational Expert ("VE") included the word
"instructions" after the word "simple." Tr. 61; see also Tr. 32 (describing limitation of "simple
instructions"). The case law in this area is sparse, but the trend emerging indicates that unclear
language or a typographical error in the RFC is harmful if it creates an actual ambiguity. Here,
any ambiguity is cured by the contextual clues provided in the hypothetical question posed to the
VE at the hearing and other portions of the ALJ's decision. See e.g., Bamforth v. Colvin, No.
C13-5618BHS, 2014 WL 2711827, at *2 (W.D. Wash. June 16, 2014) (finding scrivener's error
harmless where the parties did not contest omission in the ALJ's decision because the omitted
language was included in the dispositive hypothetical question to VE); Martinez v. Astrue, 2014
WL 310387, at *16 (N.D. Cal. Jan. 28, 2014) (holding "the ALJ committed legal error by
articulating an ambiguous RFC . . ." but finding the error harmless because "read in its proper
context, it [was] clear" what the ALJ meant; see also ANTONIN SCALIA & BRYAN A. GARNER,

At step four, considering the limitations noted above, the ALJ found plaintiff could not perform any past relevant work. Tr. 33. At step five, the ALJ found, based on the RFC and the VE testimony, a significant number of jobs in the national and local economy existed such that plaintiff could sustain employment despite his impairments. Tr. 34.

## STANDARD OF REVIEW

A district court must affirm the Commissioner's decision if the decision is based on proper legal standards and the legal findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); Batson v. Comm'r, 359 F.3d 1190, 1193 (9th Cir. 2004). Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal citation omitted). In reviewing the Commissioner's alleged errors, a court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusion." Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is rational. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

When the evidence before the ALJ is subject to more than one rational interpretation, a court must defer to the ALJ's conclusion. Batson, 359 F.3d at 1198 (internal citation omitted). The reviewing court, however, cannot affirm the Commissioner's decision on grounds the agency did not invoke in making its decision. Stout v. Comm'r, 454 F.3d 1050, 1054 (9th Cir. 2006). Finally, the court may not reverse an ALJ's decision on account of an error that is

---

READING LAW: THE INTERPRETATION OF LEGAL TEXTS 237–38 (2012) (explaining use of the absurdity doctrine to correct typographical errors: "(1) The absurdity must consist of a disposition that no reasonable person could intend[.] (2) The absurdity must be reparable by changing or supplying a particular word or phrase whose inclusion or omission was obviously a technical or ministerial error[.]").

harmless. Id. at 1055–56. "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." Shinseki v. Sanders, 556 U.S. 396, 409 (2009).

## DISCUSSION

Plaintiff argues the ALJ erred by: (1) improperly discrediting portions of plaintiff's symptom testimony; and (2) improperly rejecting consultative examiner Dr. Trueblood's opinion.

## I. Plaintiff's Symptom Testimony

Plaintiff asserts the ALJ wrongfully discredited his subjective symptom testimony concerning the severity of his impairments. Pl.'s Opening Br. 7 (doc. 18). When a claimant has a medically documented impairment that could reasonably be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so."[3] Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996) (citation omitted). A general assertion the claimant is not credible[4] is insufficient; the

_____

[3] According to the Commissioner, "courts should apply the extremely deferential 'substantial evidence' standard." Def.'s Br. 9 (doc. 22). That argument, however, is foreclosed by Burrell v. Colvin, 775 F.3d 1133, 1136 (9th Cir. 2014).

[4] The Court notes that, pursuant to SSR 16-3p, the ALJ is no longer tasked with making an overarching credibility determination and instead assesses whether the claimant's subjective symptom statements are consistent with the record as a whole. See SSR 16-3p, available at 2016 WL 1119029 (superseding SSR 96-7p). The ALJ's June 2015 decision was issued before SSR 16-3p became effective. The Ninth Circuity recently commented explaining the "ruling makes clear what our precedent already required: that assessments of an individual's testimony by an ALJ are designed to 'evaluate the intensity and persistence of symptoms after [the ALJ] find[s] that the individual has a medically determinable impairment(s) that could reasonably be expected to produce those symptoms,' and not to delve into wide-ranging scrutiny of the claimant's character and apparent truthfulness." Trevizo v. Berryhill, 862 F.3d 987 (9th Cir. 2017) (quoting SSR 16-3p). While the Commissioner asserts several arguments that "engage in ordinary

ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993). The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." Orteza v. Shalala, 50 F.3d 748, 750 (9th Cir. 1995) (citation omitted). If the ALJ's finding regarding the claimant's subjective symptom testimony is "supported by substantial evidence in the record, [the court] may not engage in second-guessing." Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002) (citation omitted).

At the March 2015 hearing, plaintiff testified his disability stemmed from his depression. Tr. 53, 57–58. Specifically, he described how his depression caused a "lack of ability to deal with stress," and caused him to "lash out verbally." Tr. 53. As a result, he has "a problem with public places," and in order to not "lash out [] violently," he withdraws. Tr. 53–55. Plaintiff testified his attempt at working with his wife cleaning homes failed after one month because his performance was deficient. Tr. 57–58. He testified in his past work at Fred Meyer he was "really stressed out," would "come home at night . . . really angry and not happy[, and] would take it out on the kids." Tr. 58. In response to a question about whether he could have continued working at Fred Meyer had he not been laid off, plaintiff testified: "[I]t would have eventually got[ten] worse. I was starting to get into altercations with customers at the cashier line and stuff like that." Tr. 58. Regarding plaintiff's mental health treatment, he testified he had recently stopped taking medication for his depression because of adverse side effects, adding his psychiatrist had "just prescribed a new prescription[, but he did not] know the name of it." Tr. 51.

---

techniques of credibility evaluation, such as considering claimant's reputation for truthfulness and inconsistencies in claimant's testimony," Def.'s Br. 14 (doc. 22) (quoting Burch, 400 F.3d at 680), because, as explained in section I.C., those arguments fail for other reasons, the Court need not inquire as to the validity of such techniques under SSR 16-3p.

After summarizing plaintiff's hearing testimony, the ALJ determined plaintiff's medically determinable impairments could reasonably be expected to produce some degree of symptoms, but his statements "concerning the intensity, persistence, and limiting effects of these symptoms" were not fully credible because: (1) his medication adequately controlled his impairments and he failed to follow prescribed treatment; (2) his activities of daily living contradicted his alleged impairments; (3) he made inconsistent statements and his statement regarding his cannabis use discredited his symptom testimony; and (4) evidence of secondary gain and self-limitation discredited his symptom testimony. Tr. 30.

## A. Medication and Failure to Follow Treatment

The ALJ found "improvement accompanied [plaintiff's] use of appropriate prescriptive medications." Tr. 30. The Commissioner correctly notes specific clear and convincing evidence can include reports of improvement through medication. Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999). The Ninth Circuit, however, has explained "such observations must be read in context of the overall diagnostic picture[.]" Ghanim v. Colvin, 763 F.3d 1154, 1162 (9th Cir. 2014) (internal quotation omitted). Moreover, that a person suffering from mental health impairments "makes some improvement does not mean that the person's impairment [] no longer seriously affect[s his] ability to function in a workplace." Ghanim, 763 F.3d at 1162 (internal quotation omitted). First, as a factual matter, plaintiff's mental health was not adequately controlled through medication. Plaintiff testified at the hearing, because of adverse side effects of his previous medication, his psychiatrist had "just prescribed a new prescription [but he did not] know the name of it," indicating that by time of the hearing in March 2015 Venlafazine no longer proved effective. Tr. 51. Second, although the ALJ cited Dr.

Jeff Mudrick's report in April 2014 noting "clear improvements since starting Venlafazine," resulting in plaintiff's "improved mood and sleep, decreased nightmare frequency, and the alleviation of suicidal thinking," (tr. 30); the ALJ failed to explain how, "in the context of the overall diagnostic picture," plaintiff's symptoms had improved to the point his impairments "no longer seriously affected" his ability to function in the workplace.[5] See Ghanim, 763 F.3d at 162; see also Garrison v. Colvin, 759 F.3d 995, 1017 (9th Cir. 2014) (noting the cyclical nature of mental health diagnosis and instructing caution in drawing inferences based upon reports of improvements during treatment).

The Commissioner also mischaracterizes the ALJ's reasoning for discounting plaintiff's testimony because he was not compliant with treatment. The ALJ's decision concludes "[a]lthough the [plaintiff] sought therapy, he declined medication," and plaintiff "failed to follow through on the strategies recommended for improving his response to distress." Tr. 31. The ALJ's decision then fails to cite to evidence in the record supporting such assertions. The Commissioner attempts to strengthen this analysis by pointing again to evidence of plaintiff's improvement when taking medications and the fact plaintiff became "very active in his wife's housecleaning business," asserting "[t]his additional evidence supports the ALJ's reasoning [that] Plaintiff was not entirely compliant with recommend treatment." Def.'s Br. 12 (doc. 22). This argument, however, was not articulated by the ALJ and therefore is not properly before this

---

[5] To the extent plaintiff alleged the ALJ erred by "improperly focus[ing] on isolated asymptomatic periods," Pl.'s Opening Br. 7 (doc. 18), he is correct. For the reasons set forth herein, this was error.

Court.[6] See Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1225 (9th Cir. 2009) ("Long-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ – not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking.").

Thus, because the ALJ failed to articulate how plaintiff had improved as a result of medication, and because the Commissioner relies on reasoning not articulated by the ALJ in her decision, these justifications do not constitute a specific, clear, and convincing reason for discrediting plaintiff's testimony regarding his mental impairments.

## B. Activities of Daily Living

The ALJ found plaintiff's activities of daily living undermined his "allegations of disabling impairments." Tr. 31. An ALJ may discount a claimant's testimony if it is inconsistent with the claimant's activities of daily living. Orn v. Astrue, 495 F.3d 625, 633 (9th Cir. 2007); Molina v. Astrue, 674 F.3d 1104, 1112–13 (9th Cir. 2012). A claimant, however, need not be utterly incapacitated to receive disability benefits, and sporadic completion of minimal activities is insufficient to support a negative credibility finding. Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001); see also Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998) (requiring the level of activity to be inconsistent with the claimant's alleged limitations to be relevant to his or her credibility).

---

[6] Even if the Court were to consider this *post hoc* rationalization, it is unclear how improvement upon taking medications and working briefly (and unsuccessfully) with plaintiff's wife would be evidence of failing to comply with medical treatment. Indeed, it cannot be both that plaintiff's alleged impairments are controlled through medication and that he failed to comply with treatment.

Plaintiff's testimony is not contradicted by his activities of daily living. In discrediting plaintiff's symptom testimony, the ALJ explained that plaintiff regularly performs the following activities: caring for his children while his wife is at work; feeding the family dogs; helping with dinner; performing personal care tasks; and vacuuming. Tr. 31. In context, however, the ALJ's findings do not demonstrate greater functional capacity than plaintiff has alleged. For example, although the record reflects that plaintiff supervises his children, he does so only during the limited window between when his children arrive home from school and when his wife returns from her part-time job. Tr. 54, 56–57. Moreover, he testified he has to convince his wife to trust that the children are safe with him. Tr. 54. While plaintiff testified he takes care of the family dogs, he receives help from his wife and children (tr. 190), and he has to be given "several reminders" when completing chores. Tr. 183. While the ALJ's opinion states plaintiff "help[s] with dinner," his assistance is limited to occasional use of a crockpot, and further, the record is unclear whether that "assistance" includes plaintiff actually preparing meals himself or just serving the meals. Tr. 57. As to personal care, plaintiff wrote he typically "stay[s] in [his] pajamas," showers "once or twice a week," and "eats dinner, [but he doesn't] know why." Tr. 191. Finally, as to vacuuming, plaintiff indicated he periodically vacuums; however, he provided the caveat that he needed to be told when to stop and "shown where [he had] missed." Tr. 192. As such, although plaintiff can perform some activities around the home, the tasks are not demanding, he often needs assistance, and the results are frequently unsatisfactory. This minimal level of activity is not at odds plaintiff's symptom testimony. Vertigan, 260 F.3d at 1050 ("This court has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in

any way detract from her credibility as to her overall disability. One does not need to be 'utterly incapacitated' in order to be disabled.") (quoting Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989)). Plaintiff's activities do not conflict with his allegations of social isolation due to his fear he might "lash out [] violently," his difficulties with "public places," or his "[in]ability to deal with stress." Tr. 53–55. Thus, plaintiff's daily living activities do not constitute a specific, clear, and convincing reason for discrediting his testimony regarding his mental impairments.

## C. Inconsistent Statements and Marijuana Use

The Commissioner argues the ALJ properly discounted plaintiff's testimony because "[t]he ALJ noted Plaintiff gave inconsistent statements, such as 'feeling' he'd only had two hours of sleep due to nightmares, but testifying he actually got six to eight hours of sleep[.]" Def.'s Br. 14 (doc 22). The Commissioner finds an inconsistency where none exists. Plaintiff's testimony that he slept for six to eight hours, but "felt" like he only received two hours is not by definition an inconsistency; rather, a personal description of a subjective experience that differs from objective reality. This finding is without merit.

The Commissioner next argues the ALJ properly discredited plaintiff's testimony because of inconsistent statements regarding his marijuana use. Def.'s Br. 15 (doc 22). The Commissioner points to a portion of the ALJ's decision that notes "although [plaintiff] stated at the hearing that he was not currently on any medications, he admitted using marijuana for a few times/four nights a week to allegedly help with his nightmares." Tr. 30. Viewed in context, however, plaintiff's testimony reveals no inconsistency. First, the ALJ asked plaintiff if he was currently taking any prescribed medications, and plaintiff responded his psychiatrist recently changed his prescription to address adverse side effects. Tr. 51. Next, the ALJ inquired whether

plaintiff still used marijuana, to which the plaintiff replied "yes." Id. Viewing the questioning in context it is apparent plaintiff did not understand the ALJ's question regarding prescribed medications to include his marijuana use. When asked about his marijuana use, plaintiff provided a candid response to the ALJ's question, characterizing his response to the ALJ's question regarding his medications as deceptive relating to his marijuana use misconstrues the record.[7] Cf. Norris v. Colvin, 160 F. Supp. 3d 1251, 1276 (E.D. Wash. 2016) ("The ALJ misconstrued the record, and purported to find inconsistent statements that could not reasonably be interpreted as inconsistent."). Moreover, it is unclear this portion of the ALJ's opinion is in fact part of the evaluation of plaintiff's symptom testimony as it occurs before the ALJ's boilerplate language addressing plaintiff's symptom testimony. See generally, Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1103(9th Cir. 2014) ("After making this boilerplate statement, the ALJs typically identify what parts of the claimant's testimony were not credible and why."). No analysis follows the statement; nor does the ALJ's decision explain what symptom testimony the statement undermines.[8] Thus, because plaintiff did not in fact make inconsistent statements

---

[7] The Commissioner's briefing also points to nearly 70 places in the record – and four lines of text – alleging "numerous inconsistencies with regard to Plaintiff's marijuana use," Def.'s Br. 15–16 (doc. 22). This argument is an impermissible *post hoc* rationalization not articulated by the ALJ in her decision. See Bray, 554 F.3d at 1225–26. Regardless, none of those statements are actually inconsistent. Plaintiff's cannabis use may have varied, but his candor in reporting that use to his medical providers remained consistent.

[8] The Commissioner's additional argument that plaintiff initially filed for disability for physical and mental impairments, but testified his impairments were only mental is an additional impermissible *post hoc* rationalizations not articulated by the ALJ. See Bray, 554 F.3d at 1225–26. As too is the Commissioner's argument that the ALJ considered plaintiff's VA rating in discrediting plaintiff. Def.'s Br. 17 (doc. 22). The portion of the ALJ opinion cited by the Commissioner is not part of the ALJ's credibility analysis and, therefore, constitutes an additional impermissible *post hoc* rationalization. See Id.

regarding his sleep patterns or marijuana use this was not a specific, clear and convincing reason for discrediting his testimony regarding his mental impairments.

**D. Secondary Gain and Lack of Motivation**

The ALJ theorized an "element of secondary gain" as a possible reason for plaintiff's "failure to return to work." Tr. 30. Specifically, the ALJ pointed to a statement plaintiff made during a consultative examination that "minimum wage jobs . . . failed to provide enough income" to support his family and that "he could support his family better on state aid." Tr. 30.

"By definition, every claimant who applies for Title II benefits does so with the knowledge – and intent – of pecuniary gain. That is the very purpose of applying for Title II benefits. The same motivation afflicts every applicant for workers compensation benefits, and every personal injury plaintiff. If the desire or expectation of obtaining benefits were by itself sufficient to discredit a claimant's testimony, then no claimant (or their spouse, or friends, or family) would ever be found credible." Altorfer v. Colvin, No. 3:14-CV-01933-HZ, 2015 WL 9255544, at *8 (D. Or. Dec. 18, 2015). Thus, while an ALJ may consider motivation and the issue of secondary gain in evaluating symptom testimony, she must identify specific, clear and convincing evidence to do so. Burrell v. Colvin, 775 F.3d 1133, 1139–40 (9th Cir. 2014).

In Burrell, the claimant's treating physician speculated the claimant was potentially motivated by secondary gain in a treatment note. 775 F.3d at 1139–40. After finding the ALJ erroneously discredited the claimant's symptom testimony based upon activities of daily living and conflicts with the medical record, the court held that such evidence, standing alone, was insufficient to discredit the claimant. Id. The court reasoned although the treatment note

"arguably support[ed]" the ALJ's findings, this single "weak reason [was] insufficient to meet the specific, clear and convincing standard." Id. (internal citation omitted).

The same reasoning applies here. Although the ALJ identified a statement that could lead one to speculate plaintiff was exaggerating his symptoms in order to procure benefits, that isolated quantum of evidence is insufficient to nullify the entirety of plaintiff's mental health testimony.[9] See Burrell, 775 F.3d at 1139–40; see also Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007) (holding "we must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence") (internal citation omitted).

The Commissioner cites Orsenbrock v. Apfel, 240 F.3d 1157, 1166 (9th Cir. 2001), for the proposition that "[e]vidence of self-limitation and lack of motivation are appropriate considerations" in evaluating a claimant's symptom testimony. Def.'s Br. 9–10 (doc. 22). That case, however, is distinguishable. In Orsenbrock, the Ninth Circuit upheld an ALJ's adverse pain allegation noting the ALJ provided six additional permissible justifications to discount the claimant's testimony. 240 F.3d at 1166. Here, the ALJ has not provided any additional

_____

[9] In arguing the ALJ based her decision on substantial evidence, the Commissioner's briefing directed the Court to other examples of plaintiff making statements about his finances and disability benefits. Def. Br. 9–10 (doc. 22). Because this argument was not cited by the ALJ in her decision it is not properly before the Court. See Bray, 554 F.3d at 1225–26. Nevertheless, a close examination of those records reveals they are duplicative copies of plaintiff's work history attached to VA disability questionnaires for plaintiff's ankle and back, and, therefore, would not constitute substantial evidence. See Burrell, 775 F.3d at 1139–40; see also Stoner v. Colvin, No. 3:16-cv-05373, 2016 WL 7228784, at *3 (W.D. Wash. Dec. 14, 2016) (holding three notations in claimants medical records indicating he was experiencing anxiety and stress related to financial difficulties is not substantial evidence to support a conclusion claimant was motivated by secondary gain).

permissible reasons to impugn plaintiff's symptom allegations. A single ambiguous statement to a consultative examiner is not clear and convincing evidence that plaintiff's allegations are not credible. The Commissioner's reference to Matney ex rel. Matney v. Sullivan, 981 F.2d 1016, 1020 (9th Cir. 1992), is similarly misplaced. Plaintiff's single statement made to a physician does not constitute a "well documented motivation to obtain social security benefits." See Id. (relying on medical evidence, claimant's testimony regarding daily activities and demeanor at the hearing, and a "well documented motivation to obtain social security benefits" to discredit pain testimony).[10] Thus, plaintiff's single statement during the consultative examinations is an insufficient justification to meet the specific, clear and convincing standard to discredit his symptom testimony. Burrell, 775 F.3d at 1139–40.

In sum, because the ALJ failed to provide specific, clear and convincing reasons for discrediting plaintiff's symptom testimony as discussed above, her decision is not supported by substantial evidence and the ALJ's credibility finding should be reversed.

---

[10] The Commissioner also argues the "ALJ considered that Plaintiff left his job at Fred Meyer not because of difficulties with social functioning, but because he was dissatisfied with the amount he was paid," Def.'s Br. 11 (doc. 22), and points the Court to the same duplicative copies of plaintiff's work history discussed in footnote nine. The Commissioner then cites Bruton v. Massanari, 268 F.3d 824, 826 (9th Cir. 2001), as amended (Nov. 9, 2001), for the proposition that "[t]he fact that a claimant stopped working for reasons other than [his] impairments is a sufficient basis to disregard pain testimony." Def.'s Br. 11 (doc. 22). Assuming Bruton explains such a rule, this case is distinguishable because the ALJ in Bruton cited to multiple additional and permissible justifications for discounting the testimony. Whereas here, duplicative copies of plaintiff's work history attached to VA disability questionnaires is not a specific, clear and convincing reason supported by substantial evidence, and the ALJ relied on no other permissible reason for discounting plaintiff's symptom testimony. See Burrel, 775 F.3d at 1139–40; Stoner, 2016 WL 7228784, at *3.

## II. Medical Opinion Testimony

Plaintiff asserts the ALJ improperly rejected the July 2014 consultative opinion of Dr. Trueblood. Pl.'s Opening Br. 10 (doc. 18); Tr. 895–904 (consultative opinion). The ALJ is responsible for resolving conflicts in the medical record, including conflicts among physicians. Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1164 (9th Cir. 2008). The Ninth Circuit distinguishes between the opinions of three types of physicians: treating physicians, examining physicians, and non-examining physicians; judicial review, consequently, accords varying weight to each. See, e.g., Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995).

Generally, the opinions of examining physicians are afforded more weight than those of non-examining physicians. Orn, 495 F.3d at 631; 20 C.F.R. § 404.1527(c)(1). Where a treating or examining physician's opinion is contradicted by another physician, the ALJ must provide "specific, legitimate reasons that are supported by substantial evidence" for discounting the examining physician's opinion. Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005). An ALJ can satisfy that burden by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Morgan, 169 F.3d at 600–01 (quoting Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)). Merely stating conclusions is insufficient: "[The ALJ] must set forth his own interpretations and explain why they, rather than the doctor[] are correct." Garrison, 759 F.3d at 1012 (internal citation omitted). In weighing conflicting medical evidence "an ALJ errs when he rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate

language that fails to offer a substantive basis for his conclusion." Garrison,759 at 1012–13 (internal citation omitted).

Dr. Trueblood administered a series of cognitive tests to plaintiff and ultimately opined: "[T]he test results provide evidence for attention-related deficits especially in information processing speed but also probably to a lesser degree in working memory or ability to concentrate on his mental contents."[11] Tr. 895, 903. He added that plaintiff's post-traumatic stress disorder ("PTSD") and depression would be expected to impact his ability to "sustain[] attention/concentration and persist[ance]." Tr. 903.

The ALJ gave Dr. Trueblood's opinion "only limited weight." Tr. 32. The ALJ explained:

> As noted in treatment records from the Portland VAMC, "assessment of an actively or recently substance-abusing patient would not be validly interpretable." [Tr. 1086]. The conclusion was the claimant's cannabis use explained or substantially contributed to his cognitive complaints. As Dr. Trueblood did not consider this factor, his conclusions have limited value.

Tr. 32.

This reasoning fails to constitute specific, legitimate reasons supported by substantial evidence for at least two reasons. First, the ALJ's assertion that Dr. Trueblood "did not consider" the effect of plaintiff's cannabis use on his cognitive functioning is unsupported by the record.

---

[11] Indeed, plaintiff's medical history confirms Dr. Trueblood's findings and includes numerous observations of cognitive complaints by treating physicians. See, e.g., Tr. 587 ("Short term-memory remains poor."); Tr. 599 ("He is in grief over losing part of his life via his memory loss post brain surgery."); Tr. 825 (GAF score between 41–50); Tr. 1085 ("[Plaintiff h]as had memory problems, associated with anger since [head neurosurgery]."); Tr. 1088 ("Please note patient has a history of brain surgery which may be a factor with his memory."); Id. ("Patient has a history of brain surgery which appears to be impacting his ability to independently follow through on this referral."); Tr. 1113 (suicidal ideation).

The record clearly shows Dr. Trueblood directly considered plaintiff's cannabis use as a factor when assessing his cognitive capabilities. <u>See, e.g.</u>, Tr. 902. ("I would tend to weigh current cannabis abuse less strongly than any of the factors that have been mentioned [in affecting plaintiff's neuropsychological impairments].") The ALJ's rationale for rejecting Dr. Trueblood's opinion is, therefore, unsupported by substantial evidence.

Second, the conclusion the ALJ attributed to the Department of Veteran Affairs ("VA") is similarly unsupported by the record. The treatment note to which the ALJ referred was written by a VA employee in response to plaintiff's treating physician's order for a neuropsychological assessment. The ALJ then mischaracterized that note as a conclusion by the VA employee regarding a "possible" connection between plaintiff's cannabis use and his cognitive complaints. <u>Compare</u> Tr. 1086 (VA employee: "It is <u>possible</u> that this patient's daily cannabis use explains or substantially contributes to his cognitive complaints.") (Emphasis added) <u>with</u> Tr. 32 (ALJ opinion: "The <u>conclusion</u> was the [plaintiff's] cannabis use explained or substantially contributed to his cognitive complaints.") (Emphasis added).

Moreover, it is unclear from the record whether the VA employee was a qualified medical professional, if there was ever a treating relationship between the VA employee and plaintiff, the frequency and duration of any such relationship, and whether the employee ever reviewed plaintiff's medical records. <u>See</u> SSR 06-03p, <u>available at</u> 2006 WL 2329939 (explaining relevant factors for weighing opinion evidence). Thus, because "the opinion of an examining physician is entitled to greater weight than that of a non-examining physician," Garrison, 759 F.3d at 1012, the opinion of Dr. Trueblood as an examining physician cannot be discounted based upon the conjecture of a VA employee who never in fact examined plaintiff.

In so doing, the ALJ essentially substituted her own opinion for that of a licensed physician who was aware of plaintiff's substance use. Cf. Day v. Weinberger, 522 F.2d 1154, 1156 (9th Cir. 1975) (reversing ALJ who substituted his own opinion and rejected medical opinion evidence of examining physician).

The Commissioner asserts the ALJ, in discrediting Dr. Trueblood, "relied on the State agency psychological consultants." Def.'s Br. 8 (doc. 22). This argument is unsupported by the record. The ALJ summarized the State agency consultants' opinions, and concluded they should be given great weight because they were "consistent with the evidentiary record." Tr. 32. The ALJ then assigned limited weight to Dr. Trueblood's opinion without identifying places where his opinion was in conflict with the State agency consultants. To the extent such a conflict existed among these physicians, to reject Dr. Trueblood's opinion the ALJ was required to "set[] out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Morgan, 169 F.3d at 600–01.

In her decision, however, the ALJ provided only a general explanation as to why she found the State agency psychological consultants' opinions persuasive, and a legally impermissible reason for assigning limited weight to Dr. Trueblood's opinion. See Garrison, 759 F.3d at 1012–13 ("If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence.") (internal quotation omitted). Although the Commissioner provides examples of findings the ALJ might have made in according greater weight to the reviewing physicians than to Dr. Trueblood, the ALJ did not raise them in her decision with sufficient specificity to allow the court to discern her reasoning. As such, the ALJ did not satisfy

the operative legal standard, and this court may not affirm a decision by an ALJ based on a *post hoc* rationalization. See Bray, 554 F.3d at 1225. Indeed, even if contradicted, Dr. Trueblood's opinion as an examining physician "is still owed deference and will often be 'entitled to the greatest weight.'" Garrison, 759 F.3d at 1012 (quoting Orn, 495 F.3d at 633).

The Commissioner next asserts that even if the ALJ wrongfully rejected Dr. Trueblood's opinion, any error in the RFC analysis and questions to the VE was harmless because the ALJ included the limitations described by state agency consultants in the hypothetical to the VE. See Molina, 674 F.3d at 1115. Indeed, the hypothetical to the VE included an additional limitation precluding plaintiff from jobs "requir[ing] public contact." Tr. 61.

Examining the record as whole, the ALJ's rejection of Dr. Trueblood's opinion was error. Dr. Trueblood found plaintiff had significant deficits in attention, concentration, and persistence, as well as a significant impairment remembering instructions. Tr. 903. Regarding social interaction, Dr. Trueblood found plaintiff had "prominent interpersonal estrangement," significant problems with temper control, and anxiety "in crowded interpersonal setting[s]." Id. Because the ALJ failed to discuss or incorporate any of the limitations described by Dr. Trueblood, the Court "cannot confidently conclude that no reasonable ALJ . . . could have reached a different disability determination." See Marsh v. Colvin, 792 F.3d 1170, 1173 (finding harmful error where ALJ failed to discuss relevant medical opinion evidence) (internal quotation marks omitted). Thus, by failing to incorporate all of plaintiff's cognitive limitations supported by substantial evidence into the RFC and, by extension, the dispositive hypothetical question posed to the VE, the ALJ's conclusions at step five of the sequential process lacked evidentiary value. See Robbins v. Soc. Sec. Admin., 466 F.3d 880, 886 (9th Cir. 2006) ("[I]f the ignored

testimony is credited, a proper hypothetical would have included limitations which, the record suggests, would have been determinative as to the vocational expert's recommendation to the ALJ. Accordingly, the ALJ's step five determination is unsupported by substantial evidence.").

In sum, because the ALJ failed to provide specific, legitimate reasons for rejecting the cognitive limitations described in Dr. Trueblood's opinion, her decision is not supported by substantial evidence, and the ALJ's credibility finding should be reversed.

## III. Remand

The decision whether to remand for further proceedings or for the immediate payment of benefits lies within the discretion of the court. Harman v. Apfel, 211 F.3d 1172, 1176-78 (9th Cir. 2000). The issue turns on the utility of further proceedings. A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings or when the record has been fully developed and the evidence is insufficient to support the Commissioner's decision. Treichler, 775 F.3d at 1099 –1100. The court may not award benefits punitively and must conduct a "credit-as-true" analysis on evidence that has been improperly rejected by the ALJ to determine if a claimant is disabled under the Act. Strauss v. Comm'r of the Soc. Sec. Admin., 635 F.3d 1135, 1138 (9th Cir. 2011); see also Dominguez v. Colvin, 808 F.3d 403, 407–08 (9th Cir. 2015) (summarizing the standard for determining the proper remedy).

The Ninth Circuit's "credit-as-true" doctrine is "settled" and binding on this Court. Garrison, 759 F.3d at 999. In conducting the "credit-as-true" analysis, the court first determines whether the ALJ committed legal error; and if so, the court must review the record and decide whether it is "fully developed, is free from conflicts and ambiguities, and all essential factual

matters have been resolved." Dominguez, 808 F.3d at 407 (internal citation omitted). Second, the court considers whether further administrative proceedings would serve a "useful purpose." Id. at 407 (internal citation omitted). Third, if the court finds the record is fully developed and further administrative proceedings would not be useful, the court may credit the improperly discredited evidence as true and determine whether the ALJ would find the claimant disabled in light of this evidence. Id. (internal citation omitted). If so, the court may remand the case for an award of benefits, although the court ultimately retains "discretion in determining the appropriate remedy." Id. at 407–08 (internal citation omitted).

Here, the first requisite is met. The ALJ failed to provide legally sufficient reasons for discrediting portions of plaintiff's symptom testimony and Dr. Trueblood's medical opinion. The second requisite, however, is not met, as the record is not fully developed. Even if the improperly discounted testimony of both plaintiff and Dr. Trueblood were credited as true, the hypothetical to the VE did not account for all of plaintiff's impairments. For example, because the ALJ summarily dismissed Dr. Trueblood's conclusions regarding plaintiff's cognitive deficits in attention, concentration, and persistence it remains ambiguous as to what impact, if any, those conclusions would have on plaintiff's RFC formulation. Accordingly, crediting the improperly discredited evidence requires re-formulation of the RFC and corresponding questions to the VE. Therefore, the record is not fully developed and it is not clear whether plaintiff is, in fact, disabled. Remand for further proceedings is appropriate. Treichler, 775 F.3d at 1105 ("Where . . . an ALJ makes a legal error, but the record is uncertain and ambiguous, the proper approach is to remand the case to the agency."). Moreover, the court notes plaintiff's request for "remand of the

ALJ's decision for further proceedings," and not an immediate payment of benefits. See Pl.'s Reply Br. 6 (doc. 23).

Accordingly, the Court should remand this matter for further administrative proceedings consistent with this Findings and Recommendation, specifically to: (1) accept plaintiff's symptom testimony regarding his inability to deal with stress, problem with public places, and social isolation or provide legally sufficient reasons for rejecting that testimony; (2) allow the ALJ to accept Dr. Trueblood's medical opinion and incorporate the cognitive deficits he described or provide legally sufficient reasons for rejecting that opinion; and (3) conduct any additional necessary proceedings.

## RECOMMENDATION

Pursuant to sentence four of 42 U.S.C. § 405(g), the decision of the Commissioner should be REVERSED and REMANDED for further proceedings consistent with this Findings and Recommendation.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment or appealable order. The parties shall have fourteen (14) days from the date of service of a copy of this recommendation within which to file specific written objections with the court. Thereafter, the parties shall have fourteen (14) days within which to file a response to the objections. Failure to timely file objections to any factual determination of the Magistrate Judge will be considered as a waiver of a party's right to de novo consideration of the factual issues and will constitute a

waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to this recommendation.

DATED this 5th day of September 2017.

s/Jolie A. Russo
Jolie A. Russo
United States Magistrate Judge